# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# BLUEFIELD DIVISION

SHAWN GIBSON

        Petitioner,

v.                                             Case No. 1:18-cv-00969

WARDEN, FCI MCDOWELL,

        Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is Shawn Gibson's (hereinafter "Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1). This matter is assigned to the Honorable David A. Faber, Senior United States District Judge and, by Standing Order, it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's § 2241 petition (ECF No. 1), **GRANT** Respondent's Motion to Dismiss (ECF No. 11-1), **DENY** Respondent's Motion to Transfer (ECF No. 11-2 and **DISMISS** this civil action for lack of jurisdiction.

## PROCEDURAL BACKGROUND AND PETITIONER'S CLAIM

### A. Petitioner's conviction.

On June 27, 2003, Petitioner pled guilty in the United States District Court for the District of Vermont to two counts of a federal indictment (Counts 3 and 6) charging him with knowingly and intentionally distributing heroin to a minor, in violation of 21 U.S.C.

§§ 841(a)(1), 841(b)(1)(C), and 859(a), and four counts (Counts 4, 5, 7, and 9) of knowingly and intentionally distributing heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *United States v. Gibson*, No. 2:02-cr-00106-wks-1, ECF No. 38 (D. Vt. June 23, 2007). (ECF No. 11, Ex. 1 at 2).[1] As part of his plea agreement, Gibson also waived his right to proceed by means of indictment and agreed to plead guilty to a superseding information (Count 1s) charging him with engaging in a conspiracy with others to distribute more than 100 grams of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). (*Id.* at 2). The government agreed to dismiss Counts 1 and 2 of the indictment at sentencing. (*Id.* at 3).

Petitioner's initial plea agreement did not resolve Count 8 of the indictment, which charged him with knowingly and intentionally distributing heroin on July 31, 2001 to Jill McCarthy ("McCarthy"), resulting in her death, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (*Id.*) On July 28, 2003, the parties filed an addendum to the plea agreement in which Gibson agreed to plead guilty to Count 8 and "acknowledged his understanding that by his plea [he] faced [an enhanced] term of imprisonment of up to life and a mandatory minimum term of imprisonment of 20 years . . . ." (*Id.* at 4).

On November 17, 2003, Petitioner was sentenced to 300 months of imprisonment on Counts 3, 6, and 8, and 240 months on Counts 4, 5, 7, and 9, which were to run concurrently, followed by a six-year term of supervised release. *Id.* at 8-9. His judgment was entered on December 11, 2003. He did not file a direct appeal. (*Id.*)

---

1 Petitioner's plea agreement and guilty plea are summarized in a Report and Recommendation ("R&R") filed on January 20, 2016 by United States Magistrate Judge John M. Conroy, which recommended the denial of Petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Respondent has attached this R&R to his Response (ECF No. 11) as "Exhibit 1." With respect to the procedural history, the undersigned will hereinafter cite to ECF No. 11, Ex. 1.

### B. Petitioner's prior post-conviction filings.

On September 11, 2015, Petitioner filed a motion to vacate, set aside, or correct sentence in his sentencing court contending that his mandatory minimum sentence on Count 8 "is no longer applicable" in light of the Supreme Court's decision in *Burrage v. United States*, 571 U.S. 204 (2014). In *Burrage*, the Supreme Court held that, for a defendant to be liable under the "death results" enhancement provision of § 841(b)(1)(C), the use of the drug distributed by the defendant must either be an independently sufficient cause of death or serious bodily injury, or must be a "but-for" cause of the death or injury. *Id.* at 218-19. The Supreme Court also found that, because the death results enhancement increased the minimum and maximum sentences to which a defendant is exposed, "it is an element that must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 210. The sentencing court denied Petitioner's § 2255 motion, finding that it was time-barred and procedurally defaulted. (ECF No. 11, Ex. 1 at 18).

### C. The instant petition for writ of habeas corpus.

On May 29, 2018, Petitioner filed the instant § 2241 petition (ECF No. 1) and a memorandum in support thereof (ECF No. 2). The petition documents re-assert Petitioner's claim that his sentencing enhancement on Count 8 because a death allegedly resulted from his distribution of heroin is improper in light of the Supreme Court's decision in *Burrage* and constitutes a miscarriage of justice.

On November 22, 2019, Respondent filed the instant Motion to Dismiss or Transfer (ECF No. 11), asserting that this court lacks jurisdiction to consider Petitioner's claim under § 2241. Petitioner did not file a reply. This matter is ripe for adjudication.

## ANALYSIS

### A.  Petitioner is not entitled to relief under section 2241.

Petitioner's claim challenges the validity of his sentence, not the manner in which his sentence is being executed. Motions under 28 U.S.C. § 2255 are the primary remedy for testing the validity of federal judgments and must be filed in the court of conviction. However, Petitioner unsuccessfully filed a § 2255 motion in the United States District Court for the District of Vermont (hereinafter "the sentencing court"). Thus, he would likely be procedurally barred from filing another § 2255 motion without authorization from the First Circuit under very limited circumstances, which, it appears, Petitioner cannot meet. *See* 28 U.S.C. § 2255(h).

28 U.S.C. § 2241 is generally used to address matters concerning the execution of a federal sentence, and is not an additional, alternative or supplemental remedy to that provided in § 2255, unless the petitioner can show that the remedy under § 2255 is inadequate or ineffective to test the legality of his detention. *In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000) ("[W]hen § 2255 proves 'inadequate or ineffective to test the legality of . . . detention,' a federal prisoner may seek a writ of habeas corpus pursuant to § 2241."). *In re Jones* relies upon the statutory language presently found in 28 U.S.C. § 2255(e), which states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

This section is known as the "savings clause." The fact that relief under § 2255 is procedurally barred does not render such remedy inadequate or ineffective to test the legality of a petitioner's detention. *Id.* at 332. Thus, the denial of Petitioner's prior § 2255 motion, standing alone, will not permit this court to review his claim under § 2241.

Accordingly, this court must first determine whether the remedy under § 2255 is inadequate or ineffective to test the legality of Petitioner's detention in order that he may pursue such relief under § 2241. Recently, the United States Court of Appeals for the Fourth Circuit modified its test to determine whether the remedy under § 2255 is inadequate or ineffective to address sentencing challenges as follows:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018). In interpreting the phrase "this circuit," the Fourth Circuit has held that it is the law of the circuit court in which Petitioner was convicted and sentenced (which in this case is the First Circuit) that controls. *See Hahn v. Moseley*, 931 F.3d 295, 301 (4th Cir. 2019) ("In evaluating substantive claims under the savings clause, we look to the substantive law of the circuit where a defendant was convicted.")

Here, Petitioner contends that the Supreme Court's decision in *Burrage* is a new and narrowed interpretation of statutory law, issued after his opportunity to file a direct appeal and a timely § 2255, which rendered his sentence fundamentally erroneous.

Therefore, he contends that § 2255 is inadequate or ineffective to test the legality of his detention and that he can satisfy the criteria to have his claim reviewed under § 2241.

Respondent, on the other hand, reiterates the findings of the sentencing court in denying Petitioner's § 2255 motion, and asserts that the decision in *Burrage* is not a new rule of constitutional law that has been made retroactive on collateral review by the Supreme Court. (ECF No. 11 at 5). Respondent's argument, however, is misplaced.

It is well-settled that substantive decisions that "narrow the scope of a criminal statute by interpreting its terms" apply retroactively to cases on collateral review. *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) (citing *Bousley v. United States*, 523 U.S. 614, 620–621 (1998)). As noted by the Fifth, Sixth, Seventh, and Eighth Circuits, *Burrage* fits that bill because "but-for" causation is a stricter requirement than the "contributing-cause" standard rejected by the Supreme Court. Consequently, some conduct that was punishable under 21 U.S.C. § 841(b)(1) pre-*Burrage* is no longer covered. *See Santillana v. Upton*, 846 F.3d 779, 783-84 (5th Cir. 2017); *Harrington v. Ormond*, 900 F.3d 246, 249 (6th Cir. 2018); *Gaylord v. United States*, 829 F.3d 500, 505 (7th Cir. 2016); *Krieger v. United States*, 842 F.3d 490, 499-500 (7th Cir. 2016); *Ragland v. United States*, 784 F.3d 1213, 1214 (8th Cir. 2015) (holding that *Burrage* narrowed the "death results" enhancement of 841(b)(1)(C) and, thus, applies retroactively).[2]

---

[2] In each of these cases, the government conceded that *Burrage* was retroactively applicable. The remaining circuits have either declined to apply *Burrage* retroactively, finding it to be an extension of the rationale applied in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013) (which have been determined to be procedural in nature and not retroactive on collateral review), or have not yet addressed the issue. *See, e.g., Dixon v. Warden, FCI Schuylkill*, 647 F. App'x 62 (3d Cir. 2016); *Atkins v. O'Brien*, 148 F. Supp.3d 547, 552 (N.D. W.Va. 2015), *aff'd*, 647 F. App'x 254 (4th Cir. 2016); *Sosa v. United States*, 769 F. App'x 855, 858-59 (11th Cir. 2019). To the undersigned's knowledge, the First Circuit (Petitioner's circuit of conviction) has not yet addressed this issue.

The determination of how and when a Supreme Court decision is retroactively applied is aptly described by the Seventh Circuit panel in *Krieger* as follows:

> A new rule announced by the Supreme Court applies to all cases still pending on direct review, but for cases such as this one, on collateral review where a final judgment has been issued, the rule applies only in certain circumstances. *Schriro v. Summerlin*, 542 U.S. 348, 351, 124 S. Ct. 2519, 159 L.Ed.2d 442 (2004). One such circumstance is when the new rule is substantive. *Welch v. United States*, ––– U.S. ––––, 136 S. Ct. 1257, 1264, 194 L.Ed.2d 387 (citing *Schriro,* 542 U.S. at 351, 124 S. Ct. 2519). Rules that "narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish" are substantive and thus apply retroactively. *Schriro*, 542 U.S. at 351–52, 124 S. Ct. 2519 (internal citations omitted). "Such rules apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Id.* at 352, 124 S. Ct. 2519 (internal quotations omitted). In other words, "a rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Id.* at 353, 124 S. Ct. 2519.

842 F.3d at 497. The *Krieger* Court further explained the retroactivity requirement in distinguishing *Burrage* from *Alleyne*:

> *Burrage* did reference *Alleyne* to establish that "[b]ecause the 'death results' enhancement increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt." *Burrage*, 134 S. Ct. at 887. This was a foundational issue in *Burrage*, however, and not its holding. <u>The *Burrage* holding is not about who decides a given question (judge or jury) or what the burden of proof is (preponderance versus proof beyond a reasonable doubt). It is rather about what must be proved.</u> The holding of *Burrage* could not be more clear, for the Supreme Court set forth its holding, by stating, "We hold that, at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Id.* at 892. <u>In other words, the rule announced in *Burrage* altered the range of conduct that the law punishes.</u> *Schriro*, 542 U.S. at 353, 124 S. Ct. 2519.

*Id.* at 499-500 (emphasis added).

Without a concession of retroactivity by the government herein, the undersigned believes the better rationale is that applied by the Fifth, Sixth, Seventh, and Eighth Circuits, finding that *Burrage* is a retroactive substantive change in the law because it alters the range of conduct that the law punishes. Therefore, Respondent's argument that Petitioner cannot meet the second prong of the savings clause criteria because *Burrage* is not a new rule of constitutional law that has been made retroactive by the Supreme Court (which is required for filing a second or successive § 2255 motion) is of no moment. Thus, Petitioner can, in fact, satisfy the second *Wheeler* prong, as well as first and third. As noted by both parties and as addressed by the sentencing court when it denied Petitioner's § 2255 motion, *Burrage* is not a new rule of constitutional law. Thus, Petitioner cannot satisfy the gatekeeping provisions under § 2255(h) to file a second or successive § 2255 motion based upon *Burrage*.

Presuming that Petitioner can meet the first three prongs of the *Wheeler* test, the undersigned turns to the fourth *Wheeler* prong requiring a fundamental sentencing defect. Before *Burrage*, courts could apply the "death results" enhancement at sentencing based upon a preponderance of the evidence showing that the subject drug distribution contributed to the victim's death. After *Burrage*, the drug in question must have been the "but-for" causation of the death, and such causation must either be made by a jury or admitted by the defendant.

Here, Petitioner pled guilty after being advised by his counsel that the medical examiner found that McCarthy died of "acute drug: morphine from heroin intoxication" based upon physical findings consistent with ingestion of heroin. Additionally, two hypodermic needles (one of which was positive for heroin residue), 11 wax bags containing

heroin residue, three plastic straws, and five unidentified white pills were located in Petitioner's bedroom where McCarthy's body was found.

Petitioner now asserts that testimony would show that McCarthy ingested other substances the night she died, including alcohol, alprazolam (Xanax), and marijuana. His memorandum of law also states his counsel first mistakenly suggested that McCarthy had Gamma Hydroxybutyrate (GHB) in her system. Petitioner further contends that he was never presented with the toxicology report, and that there is an "uncertainty" about all the substances McCarthy may have consumed. Thus, Petitioner contends that a finding that McCarthy's death resulted from ingesting heroin is questionable. (ECF No. 2 at 21-22).

*Burrage* essentially held that the drug distributed by the defendant must have been an independently sufficient cause of the victim's death. During Petitioner's plea hearing, the government proffered that the medical examiner made findings that are consistent with a heroin overdose, including congestion and edema in the lungs. The proffer further indicated that the medical examiner would testify that after heroin is ingested, it breaks down in a matter of minutes into morphine and 6-monoacetylmorphine, both of which were found in McCarthy's blood specimen.

The toxicology report indicated that McCarthy had a lethal amount of morphine in her body. Additionally, the medical examiner did not attribute any other substances as contributing to or causing McCarthy's death. Rather, as noted above, his cause of death finding was "acute drug: morphine from heroin intoxication." Moreover, at his plea hearing, Petitioner voluntarily admitted under oath that his distribution of heroin to McCarthy resulted in her death. (*Id.* at 28).

Petitioner's representations that McCarthy ingested other substances on the night she died are inadequate to demonstrate that the heroin she ingested was not an independently sufficient cause of her death. Consequently, Petitioner's sentencing enhancement is supported by the evidence of record and Petitioner is unable to demonstrate that the substantive change in the law in *Burrage* resulted in a fundamental defect in his sentence.[3] Therefore, he cannot satisfy the fourth *Wheeler* prong.

The undersigned proposes that the presiding District Judge **FIND** that, because Petitioner cannot satisfy all of the *Wheeler* criteria, he has not demonstrated that § 2255 is inadequate or ineffective to test the legality of his detention. Therefore, his claim is not proper for consideration under 28 U.S.C. § 2241 and he is not entitled to habeas corpus relief on his *Burrage* claim in this court.

### RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's § 2241 petition (ECF No. 1), **GRANT** Respondent's Motion to Dismiss (ECF No. 11-1), **DENY** Respondent's Motion to Transfer (ECF No. 11-2), and **DISMISS** this civil action for lack of jurisdiction.

---

[3] To the extent that Petitioner's memorandum of law suggests that his guideline calculation on Count 8 is improper due to the "death results" enhancement, "*Burrage* has not been held to apply to the Sentencing Guidelines." *Young v. Antonelli*, No. CV 0:18-1010-CMC-PJG, 2019 WL 4044113, at 2 (D.S.C. Jan. 23, 2019), *report and recommendation adopted*, No. CV 0:19-1010-CMC, 2019 WL 3162398 (D.S.C. July 6, 2019); *see also Beuterbaugh v. Warden, FCI Gilmer*, No. 5:19CV239, 2019 WL 8273551, at *4 (N.D.W. Va. Nov. 18, 2019), *report and recommendation adopted*, No. 5:19-CV-239, 2020 WL 1433536 (N.D.W. Va. Mar. 23, 2020) (collecting cases finding that *Burrage* applies only to the statutory "death results" enhancement and not to the corollary sentencing guidelines enhancements).

Petitioner is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, Petitioner shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). A copy of such objections shall be served on Judge Faber.

The Clerk is directed to file this Proposed Findings and Recommendation and mail a copy of the same to Petitioner and to transmit a copy to counsel of record.

August 31, 2020

Dwane L. Tinsley
United States Magistrate Judge