IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

SHAWN GIBSON,

    Petitioner,

v.                                          CIVIL ACTION NO. 1:18-00969

WARDEN, FCI MCDOWELL,

    Respondent.

### MEMORANDUM OPINION AND ORDER

By Standing Order, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of findings and recommendation regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Tinsley submitted to the court his Proposed Findings and Recommendation ("PF&R") on August 31, 2020, in which he recommended that the court deny petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2241 and grant respondent's motion to dismiss. (See ECF No. 12.)

In accordance with the provisions of 28 U.S.C. § 636(b), petitioner was allotted fourteen days and three mailing days in which to file any objections to the PF&R. The failure of any party to file such objections within the time allowed constitutes a waiver of such party's right to a *de novo* review by this court. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989).

Petitioner did not timely file objections.  On September 21, 2020, however, petitioner, acting *pro se*, filed a motion seeking additional time to file objections to the PF&R.  (ECF No. 13.)  The envelope in which petitioner sent his motion was postmarked September 16, 2020.  In his motion for an extension, petitioner stated that he was "pretty whiped [sic] out" from two bouts of COVID-19.  (Id.)  He also stated that he had no paper and that he had been having trouble obtaining a copy of a toxicology report.  (Id.)

On October 7, 2020, the court granted petitioner's motion for additional time to file objections and granted him until November 6, 2020, to do so.  Petitioner filed objections on October 30, 2020.[1]

I.  **Factual Background**

In the early 2000s, petitioner was a heroin dealer in Vermont.  (See ECF No. 2.)  Even while enrolled in a drug treatment program in Massachusetts in the spring and summer of 2001, he kept selling heroin.  (See id.)

On the afternoon of July 31, 2001, after her father stopped by petitioner's parents' residence looking for her, police found 22-year-old Jill McCarthy dead in petitioner's bedroom.  (See

---

[1] Petitioner also filed objections on November 5, 2020, but this set of objections appears to be a duplicate of his October 30 objections.

2

id.)  The autopsy "concluded that she died of 'acute drug: morphine from heroin intoxication.'"  (See id. (quoting autopsy report).)

Petitioner subsequently pleaded guilty to knowingly and intentionally distributing heroin to a minor[2] (two counts) and knowingly and intentionally distributing heroin (four counts).  In a July 28, 2003 addendum to the plea agreement, petitioner agreed to plead guilty to distributing heroin that resulted in Ms. McCarthy's death, in violation of 21 U.S.C. § 841(b)(1)(C).

At petitioner's sentencing, the court calculated an offense level of 37 and a guideline range (under then-mandatory guidelines) of 262 to 327 months.  (Sentencing Hr'g Tr. 76:4-77:25, ECF No. 68, Case No. 2:02-cr-00106 (D. Vt.).)  The court then sentenced petitioner to 300 months on counts 3, 6, and 8 (the charge under § 841(b)(1)(c) was count 8), and 240 months on the other charges, to run concurrently, followed by six years of supervised release.  (Tr. 77:6-25).

In arguing that petitioner had accepted responsibility for his crimes, his counsel stated, "He stood up to the plate and admitted that the heroin that he had, he gave to his girlfriend that night, indeed caused her death."  (Tr. 33:5-7.)  After describing it as "a real close case," the court concluded "that

---

[2] Ms. McCarthy was not a minor, so these two counts were not for distribution to her.

3

there ha[d] been a showing that [petitioner had] clearly demonstrated acceptance of responsibility." (Tr. 56:15-22.)

At the sentencing hearing, petitioner admitted that he "instructed [a witness] to falsify testimony." (Tr. 28:23-29:17). The court noted, "I find [petitioner's] conduct in regard to talking with someone else to manufacture a story or a defense just reprehensible." (Tr. 57:10-15.) The court further found petitioner's subornation of perjury to be "extraordinarily serious" and described it as "a significant factor in the Court's ultimate decision as to where within the guidelines the sentence should be imposed." (Tr. 57:10-58:1.)

In articulating its reasoning for the sentence it imposed, the court stated that the first factor was petitioner's attempt to obstruct justice by asking someone to testify falsely. (See Tr. 72:12-13.) The court further noted the "history beyond just the act which resulted in Miss McCarthy's death." (Tr. 73:6-7.) The history was one of petitioner's extensive involvement in the distribution of drugs and the "countless, countless families who suffered as a result of the heroin that was distributed." (Tr. 73:6-19.) The court noted its "responsibility . . . to project a clear message that the courts . . . respond in a particular kind of way to this criminal behavior" and stressed that the "message has to be very clear to people who would ever think

4

that they should distribute heroin or any other drug." (Tr. 74:8-16.)

On September 11, 2015, petitioner moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing that under Burrage v. United States, 571 U.S. 204 (2014), the mandatory minimum under count 8 was "no longer applicable." The sentencing court denied the motion. On May 29, 2018, the petitioner filed this petition under § 2241, again challenging his sentence under Burrage. On November 22, 2019, respondent filed a motion to dismiss or transfer, arguing that this court lacks jurisdiction to hear this § 2241 petition. (ECF No. 11.)

**II. Standard of Review of *Pro Se* Objections**

Pursuant to Fed. R. Civ. P. 72(b), the court must "make a *de novo* determination upon the record . . . of any portion of the magistrate judge's disposition to which specific written objection has been made." However, the court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985).

Furthermore, *de novo* review is not required and is unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."

5

Orpiano v. Johnson, 687 F.2d 44, 47–48 (4th Cir. 1982); see also United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007) ("[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection."); McPherson v. Astrue, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009) ("[F]ailure to file a specific objection constitutes a waiver of the right to *de novo* review.").

"A document filed *pro se* is 'to be liberally construed.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Specifically as to objections to a PF&R, courts are "under an obligation to read a *pro se* litigant's objections broadly rather than narrowly." Beck v. Comm'r of Internal Revenue Serv., 1997 WL 625499, at *1-2 (W.D.N.C. June 20, 1997) (citing Orpiano, 687 F.2d at 48). However, objections that are "unresponsive to the reasoning contained in the PF&R" are irrelevant and must be overruled. Kesterson v. Toler, 2009 WL 2060090, at *1 (S.D.W. Va. July 7, 2009) (citing Orpiano, 687 F.2d at 47).

### III. **Petitioner's Objections**

The court finds that Judge Bailey's description of the objections in another case to apply here as well:

6

> Petitioner's Objections do not specifically contest the [PF&R]. Instead, the vast majority of the Objections are simply paragraphs copied from a Sixth Circuit case, Harrington v. Ormond, 900 F.3d 246 (6th Cir. 2018), in which the Sixth Circuit found the petitioner to have "properly petitioned for relief under § 2241" based on Burrage. This Court assumes petitioner did such because he believes Harrington is analogous to his instant § 2241 Petition and wants this Court to find the same.

Beuterbaugh v. Warden, FCI Gilmer, No. 5:19-CV-239, 2020 WL 1433536, at *2 (N.D.W. Va. Mar. 23, 2020).

In Harrington, the Sixth Circuit construed the § 2241 petition before it "as one of actual innocence," applied the savings clause test applicable in that circuit – which requires a petitioner to show that "it [is] more likely than not that no reasonable juror would have convicted him" – and determined that an evidentiary hearing was necessary to determine whether the petitioner there could make such a showing. See 900 F.3d 246, 249-50.

The Sixth Circuit has a different savings clause test than the Fourth Circuit does, and Sixth Circuit case law is not binding on this court. Moreover, petitioner does not explain why Harrington forms the basis for a valid objection to the PF&R. He does not explain how that case is similar to this one. He does not renew his request for an evidentiary hearing, which was the only relief that the Sixth Circuit provided there. Instead, he concludes that "it is indisputable that the District

7

Court erred when it sentenced Gibson under the death caused [sic] enhancement pursuant to USSG § 2D1.1(a)(2), when the death-result enhancement was not submitted to the jury and found beyond a reasonable doubt. Burrage, 571 U.S. at 210." (ECF No. 15, at 7.) He concludes by asking that the court "vacate his sentence for resentencing." (Id.)

A guilty plea is essentially the equivalent of a jury conviction. Although Burrage spoke in terms of what needed to be submitted to a jury, it did not change the fundamental principle that a guilty plea renders a jury unnecessary. See 571 U.S. at 210. As the Seventh Circuit has explained, "The Burrage holding is not about who decides a given question (judge or jury) or what the burden of proof is (preponderance versus proof beyond a reasonable doubt). It is rather about what must be proved." Krieger v. United States, 842 F.3d 490, 499-500 (7th Cir. 2016). Petitioner's objection that his sentence cannot stand because a jury did not convict him is therefore **OVERRULED**.

Petitioner also objects to the overall conclusion that his petition does not qualify under the savings clause. See 28 U.S.C. § 2255(e). The savings clause test applies when

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was

8

>deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

United States v. Wheeler, 886 F.3d 415, 429 (4th Cir. 2018).

Section 841(b)(1)(C) of title 21 of the United States Code declares that if "death or serious bodily injury results" from a defendant's distribution of certain controlled substances, the penalty is a minimum of twenty years imprisonment. Petitioner argues that in light of the Supreme Court's decision in Burrage, his sentence for violating this statute was imposed in error.

In Burrage, the Court held that in order to prove criminal liability under § 841(b)(1)(C), the government must prove that the victim's use of the drug that the defendant distributed to the victim was either (1) "independently sufficient to cause the victim's death or serious bodily injury" or (2) "a but-for cause of the death or injury." See 571 U.S. at 218-19. The Court rejected the use of a jury instruction that required the drug to be merely a "contributing cause" of death. Id. at 208. The victim in Burrage died after "an extended drug binge," and experts who testified at trial were unable to say whether he would have lived but for his use of the one gram of heroin that Marcus Burrage had distributed to him. Id. at 206-07.

9

Although § 841(b)(1)(C) simply describes the penalties for drug distribution, the Court explained that when the government seeks to prove a "death results" distribution crime under § 841(b)(1)(C), the resulting death "is an element that must be submitted to the jury and found beyond a reasonable doubt." Burrage, 571 U.S. at 210. This is because under Alleyne v. United States, 570 U.S. 99 (2013), "any fact that increases the mandatory minimum sentence for a crime is an element of a crime that must be submitted to a jury and found beyond a reasonable doubt."[3]

For purposes of his 28 U.S.C. § 2241 challenge, Burrage helps petitioner only if it is retroactively applicable on collateral review. See Wheeler, 886 F.3d at 429. The substantive law of the Second Circuit applies to decide the retroactivity question. See Hahn v. Moseley, 931 F.3d 295, 301 (4th Cir. 2019).[4] Although the Second Circuit has yet to tackle whether Burrage is retroactive, the Fifth, Sixth, Seventh, and Eighth Circuits have held that it is. Santillana v. Upton, 846

---

[3] Even in post-Burrage jury trials, however, unless the record suggests that the victim "might have died nonetheless from the effects of other substances," courts are not required to provide jury instructions clarifying that "results from" requires but-for causation or independently sufficient causation. See United States v. Alvarado, 816 F.3d 242, 249 (4th Cir. 2016).
[4] The PF&R mistakenly identifies the controlling law as that of the First Circuit, but this error is harmless because it concludes that Burrage is retroactive.

10

F.3d 779, 784 (5th Cir. 2017) ("In sum, as a substantive decision narrowing the scope a federal criminal statute, Burrage applies retroactively to cases on collateral review."); Harrington v. Ormond, 900 F.3d 246, 249 (6th Cir. 2018) ("Substantive decisions that narrow the scope of a criminal statute by interpreting its terms apply retroactively to cases on collateral review. Burrage fits that bill: because but-for causation is a stricter requirement than, for example, the contributing-cause rule rejected in Burrage, some conduct punished by 21 U.S.C. § 841(b)(1) pre-Burrage is no longer covered post-Burrage." (internal quotation marks and citations omitted)); Krieger v. United States, 842 F.3d 490, 500 (7th Cir. 2016) ("Burrage applied a new substantive rule that must be applied on collateral review."); Ragland v. United States, 784 F.3d 1213, 1214 (8th Cir. 2015) (accepting government's concession on retroactivity issue). Given the Second Circuit's silence on the issue and the weight of persuasive authority, this court agrees with Magistrate Judge Tinsley's conclusion that, for purposes of this petition, Burrage applies retroactively upon collateral review.

Respondent's motion argues that the petition does not fall under the savings clause of § 2255(e). Because the savings clause is jurisdictional, see Wheeler, 886 F.3d at 426, respondent's motion is properly construed as a motion to dismiss

11

under Federal Rule of Civil Procedure 12(b)(1). The bulk of respondent's motion rests on the premise that Burrage does not apply retroactively on collateral review. Respondent says that the petition fails prong two of the § 2255(e) savings clause test set forth in Wheeler.

The PF&R correctly rejects respondent's contention that this petition fails under prong two of Wheeler because Burrage is not retroactive; nevertheless, the PF&R correctly concludes that the petition fails under prong four of Wheeler. Prong four requires due to a retroactive change in the law, the "sentence now presents an error sufficiently grave to be deemed a fundamental defect." Id. at 415.

Had there been an error here, it would likely be "fundamental" because petitioner was sentenced under mandatory guidelines. Compare Braswell v. Smith, 952 F.3d 441, 450 (4th Cir. 2020) ("Because Appellant's mandatory minimum was erroneously increased, according to Wheeler, his sentence 'presents an error sufficiently grave to be deemed a fundamental defect.'") with United States v. Foote, 784 F.3d 931, 940 (4th Cir. 2015) ("Considering where this case falls on the cognizability spectrum, we conclude Appellant's career offender designation was not a fundamental defect that inherently results in a complete miscarriage of justice."). But there was no error

at all, so the PF&R is correct that this petition fails under prong four of Wheeler.

In Wheeler, there was a sentencing error as a matter of law because the predicate offenses no longer qualified under a change in the law. Here, petitioner does not argue an error as a matter of law. Petitioner argues an error of proof. First and foremost, this claim of error fails because petitioner pleaded guilty.

> [A] defendant's solemn declarations in open court affirming [a plea] agreement . . . carry a strong presumption of verity because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. Indeed, because they do carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings . . . . Thus, in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false.

United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (citations and quotation marks omitted).

As part of his plea, petitioner admitted that his distribution of heroin to Ms. McCarthy resulted in her death. The PF&R explains,

> During Petitioner's plea hearing, the government proffered that the medical examiner made findings that are consistent with a heroin overdose, including congestion and edema in the lungs. The proffer further indicated that the medical examiner would testify that after heroin is ingested, it breaks down in a matter of minutes into morphine and 6-

13

> monoacetylmorphine, both of which were found in McCarthy's blood specimen.
>
> The toxicology report indicated that McCarthy had a lethal amount of morphine in her body. Additionally, the medical examiner did not attribute any other substances as contributing to or causing McCarthy's death. Rather, as noted above, his cause of death finding was "acute drug: morphine from heroin intoxication." Moreover, at his plea hearing, Petitioner voluntarily admitted under oath that his distribution of heroin to McCarthy resulted in her death.

(ECF No. 12, at 29.)

Second, unlike in Burrage, petitioner points to no expert opinions suggesting that Ms. McCarthy would have lived but for her use of the heroin, nor to other evidence that the heroin was insufficient to cause her death. Petitioner contends that this case is just like Burrage because besides using the heroin that he distributed to her, Ms. McCarthy allegedly drank alcohol, smoked marijuana, and took alprazolam in the time leading up to her death. He says that "there was a [sic] testimony . . . proving that Jill ha[d] been drinking, eating, taking alprazolam, along with who knows what others were seen." (ECF No. 2, at 23.) Petitioner states that it is "questionable" whether Ms. McCarthy died from "heroin alone." (Id. at 21-22.)[5]

---

[5] To the extent petitioner implies that the death must have resulted in "heroin alone" in order to comport with Burrage, petitioner is wrong. Other substances could have "played a part in [Ms. McCarthy's] demise, so long as, without the incremental effect of the [heroin], [s]he would have lived." Burrage, 571 U.S. at 211.

He suggests that "a complete autopsy result of the lab procedures" would help clear up the uncertainty. Petitioner's speculations are insufficient to undermine the factual basis of his conviction. Also, petitioner acknowledged at his sentencing that the "heroin that was given to Ms. McCarthy was extraordinarily potent." (Tr. 41:20-22.)

Because there is no error at all under prong four of Wheeler, petitioner's objection is **OVERRULED**.

## IV. Conclusion

The court has reviewed the record, the Magistrate Judge's findings and recommendations, and petitioner's objections. For the reasons discussed above, petitioner's objections are **OVERRULED**.

The court adopts the Findings and Recommendation of Magistrate Judge Tinsley as follows:

1. Petitioner's § 2241 petition is **DENIED**;
2. Respondent's motion to dismiss is **GRANTED**;
3. Respondent's motion to transfer is **DENIED**; and
4. This action is **DISMISSED** without prejudice for lack of jurisdiction.

Additionally, the court has considered whether to grant a certificate of appealability. See 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that the governing standard is not satisfied in this instance.  Accordingly, the court **DENIES** a certificate of appealability.

The Clerk is further directed to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

**IT IS SO ORDERED** this 15th day of March, 2021.

ENTER:

*David A. Faber* (signature)
David A. Faber
Senior United States District Judge